## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TONAL SYSTEMS, INC.,

     Plaintiff,

  v.

ECHELON FITNESS MULTIMEDIA
LLC,

     Defendant.

Civil Action No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Tonal Systems, Inc. ("Tonal"), for its Complaint against Defendant Echelon Fitness Multimedia LLC ("Echelon"), alleges as follows:

### NATURE OF THIS ACTION

1. This is an action for infringement of U.S. Patent Nos. 11,324,983 ("the '983 Patent," attached hereto as Exhibit 1), 8,287,434 ("the '434 Patent," attached hereto as Exhibit 2), 11,426,618 ("the '618 Patent," attached hereto as Exhibit 3), and 11,806,581 ("the '581 Patent," attached hereto as Exhibit 4) (collectively, "the Asserted Patents"). Echelon infringes the Asserted Patents by making, using, testing, offering to sell, selling, and/or importing into the United States the Echelon Strength Pro, and Echelon actively induces its customers to infringe the Asserted Patents by using Echelon's Strength Pro.

### THE PARTIES

2. Tonal is a corporation organized and existing under the laws of Delaware, with its principal place of business located at 617 Bryant Street, San Francisco, CA 94107.

3. Tonal is the creator and manufacturer of a groundbreaking digital strength-training system that pairs a revolutionary electromagnetic resistance engine with

1

personalized and engaging video content in a sleek, compact, space-saving design. In recognition of its pioneering work, Tonal has been awarded numerous patents, including the Asserted Patents, which protect its award-winning and innovative technology. Tonal is the sole owner of the Asserted Patents.

4.     On information and belief, Echelon is a limited liability company organized and existing under the laws of Delaware, with its principal place of business located at 605 Chestnut Street, Chattanooga, TN 37450. Echelon offers for sale the Echelon Strength Pro.

## JURISDICTION AND VENUE

5.     This civil action arises under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

6.     This Court has personal jurisdiction over Echelon, and venue is proper in this district pursuant to 28 U.S.C. § 1400(b) because Echelon is incorporated under the laws of Delaware.

## BACKGROUND

### A.    Tonal's Groundbreaking Patented Technologies

7.     Founded in 2015, Tonal is the creator of a pioneering smart home gym that leverages digital weight provided by an electromagnetic motor that is monitored and controlled by Tonal's artificial intelligence and motion sensor technology. Tonal's smart home gym allows users to complete an effective, safe, and well-rounded cable strength-training routine from the convenience of their home.

8.     Tonal's founder, Aly Orady, came up with the idea for Tonal's revolutionary digital weight technology while at a gym, where he was working out on a huge cable exercise

2

machine. He wished he could do the same workout at home and realized that he could replace the gym exercise equipment's reliance on gravity and big metal plates with electromagnetic resistance and an intelligent control system. Orady went to work brainstorming and then prototyping what would eventually become—after years of effort—Tonal's smart home gym. Tonal continued to invest significant time and resources to improve its home gym and ultimately developed Tonal 2, which delivers enhanced smart coaching features and a more versatile strength-training experience.

9.      Tonal's groundbreaking products combine a number of key features:  (1) a sophisticated digital motor that simulates and improves upon physical weights and allows for dynamic resistance adjustment; (2) a sleek, attractive, compact design that minimizes the space required in users' homes while permitting flexible exercise positioning; (3) a touchscreen display with an extensive library of engaging, personalized, and interactive video workouts that can adjust based on the user's behavior during exercise; (4) intelligent safety features, including the ability to prevent conflicting or potentially unsafe user actions during operation; and (5) a variety of functional accessories that can be safely interchanged to maximize the number and types of workouts that can be performed.

10.     The first of its kind, Tonal's home gym has garnered industry accolades and a devoted fanbase, including well-known athletes such as LeBron James and Serena Williams. Tonal has been recognized with numerous awards for its superior performance, design, and innovation, including by *Men's Health* in its Fitness and Home Gym Awards, by *Fast Company* for its Innovation by Design Awards, by the Industrial Designers Society of America for its International Design Excellence Awards, and by The Edison Awards.  In 2019, the Core 77 Design Awards recognized Tonal as the "World's First Digital Weights

Home Gym." Tonal 2 has similarly garnered positive coverage and high praise from major media and fitness outlets, including *GQ* for its adaptive resistance technology and its innovative, sleek design, and *PCMag* for awarding it Best Digital Weight Machine.



11. Tonal has invested a significant amount of time and money in research and development to invent, design, and develop its innovative digital strength-training technology. The Asserted Patents describe and claim inventions related to this technology, which are embodied in Tonal's groundbreaking home gym.

12. The '983 Patent, for example, relates to Tonal's compact, motor-driven strength-training architecture. Using a proprietary, low-profile digital motor and cable-based resistance system, the Tonal home gym simulates traditional free weights while eliminating the need for bulky weight stacks. The system delivers resistance from the digital motor through adjustable arms that can be securely positioned to accommodate a wide range of exercises and user body types. By routing the resistance cables through the arms and locking the arms in place during use, Tonal ensures consistent resistance delivery and stable positioning throughout each movement.

13.    The '618 Patent relates to Tonal's intelligent digital weight control and safety features.  Unlike conventional gym equipment, Tonal allows users to digitally "rack" and "unrack" weight through on-device controls that signal Tonal's motor to apply or remove tension to the machine's cables.  Tonal's system manages these commands through software logic that prevents conflicting or unsafe operations—such as re-engaging resistance while an "unrack" process is processing.  This digital control architecture improves workout flow while reducing the risk of sudden or unintended resistance engagement, helping users train more confidently and safely during high-intensity or fatigue-inducing workouts.



14.     The '434 Patent relates to Tonal's interactive, performance-responsive video content.  Using the Tonal home gym, users can participate in live or on-demand video exercise programs.  Tonal automatically sets the resistance for each exercise to the suggested weight and adjusts the resistance during the exercise program based on the user's performance.  This includes dynamic weight modes that modify resistance at specific points in an exercise.[1]  In "Eccentric mode," for example, Tonal increases resistance during the eccentric phase of the user's movement.  These dynamic weight modes make every repetition more effective and precise, and support training methods that are difficult or impossible to replicate with other forms of resistance.

---

[1] https://knowledge.tonal.com/s/article/Intelligence-Dynamic-Weight-Modes.



15.    Lastly, the '581 Patent relates to Tonal's adaptive user-interface technology that delivers exercise guidance in real time during a workout.  Unlike static workout videos that operate on a fixed timeline, Tonal presents instructional video and audio content while the user is actively exercising and dynamically adjusts the timing of that content based on the user's pace and progress.  Tonal stores multiple sequences of content and uses "time flex" to pause, delay, or advance the content so that instruction remains synchronized with the user's movements.  For example, time flex can allow a rest period to occur between exercises if a user is not ready to move on to the next exercise.  This flexible, responsive presentation mimics the experience of a human trainer, ensuring that the online coaching aligns with how each user actually performs an exercise rather than forcing the user to keep up with pre-timed instruction.

**B.    Echelon's Infringing Strength Pro Product**

16.    Echelon sells a digital strength-training machine called the Echelon Strength Pro ("the Infringing Product").  The Infringing Product has been offered for sale since at least August 15, 2023.[2]

17.    Echelon directly targets current and prospective Tonal customers, emphasizing the Infringing Product's purportedly similar features, including its digital weight system, electric motor, easy-to-use and -adjust resistance, interactive content, adjustable dual-arm design, and safety features.  On information and belief, Echelon copied these features directly from Tonal's home gym, using Tonal's patented technology.  Absent injunctive relief, Echelon's ongoing conduct will continue to cause Tonal immediate and irreparable harm.

18.    For example, like the Tonal home gym's arms (shown on the left below), the Infringing Product's arms (shown on the right below) are vertically pivotable through the use of a locking mechanism with a trapezoidal tooth component:



---

[2] https://www.prnewswire.com/news-releases/echelon-fitness-strengthens-its-portfolio-with-newest-launch-301899184.html.

19.    Also like the Tonal home gym (shown on the left below), the Infringing

Product (shown on the right below) employs safety features that allow a user to unrack and

re-rack their weights with the press of a button on the machine's handles:





20.    Furthermore, like the Tonal home gym (shown on the left below), the

Infringing Product (shown on the right below) employs a compact digital motor that adjusts

the resistance to the user at particular points during an exercise, including by way of

"Concentric," "Isokinetic," and "Chain."



21.     Tonal highlighted these similarities, and many others, to Echelon in a letter dated October 31, 2025.[3]  In that letter, Tonal notified Echelon of the Asserted Patents and of Echelon's infringement of those patents through its Strength Pro product.  Tonal also provided Echelon with detailed, exemplary claim charts explaining how Echelon's Strength Pro practices each element of Claim 1 of each of the Asserted Patents, thereby placing Echelon on actual notice of its infringement.  Tonal further provided Echelon with the opportunity to cease its infringing conduct by stopping the manufacture, use, sale, offer for sale, and/or importation of the Strength Pro product.

22.     Despite receiving Tonal's October 31, 2025 letter and the detailed claim charts demonstrating infringement, Echelon consciously disregarded Tonal's patent rights and continued its infringing conduct.  Although Echelon initially asserted purported non-infringement positions in response,[4] those positions were objectively baseless.  Indeed,

---

[3] Exhibit 5.
[4] Exhibit 6.

after Tonal identified the flaws in Echelon's arguments,[5] Echelon abandoned many of them

and pivoted to new, similarly meritless non-infringement arguments in an effort to justify its

continued infringement.[6]

23.    For example, as Tonal explained in its initial letter, Echelon's Strength Pro

infringes the '983 Patent because of its arm-locking mechanism made up of two

components—a bar and a wheel with trapezoidal teeth.[7]   Echelon did not dispute that the

Strength Pro includes an arm-locking mechanism made up of a bar and a wheel with teeth.

Rather, Echelon asserted that the teeth are rectangular rather than trapezoidal.  That assertion

is belied by Echelon's own supporting images, which instead further confirm infringement:



    **11-12-2025 Johnson Letter at 3.**                **'983 Patent at Fig. 6.**

24.    When Tonal pointed out that the teeth on the Strength Pro's wheel are

trapezoidal, Echelon pivoted to a new, equally meritless non-infringement argument, asserting

that the Strength Pro uses a male locking member and that the wheel is a female locking

---

[5] Exhibit 7.
[6] Exhibit 8.
[7] Exhibit 6 at Claim Chart '983.

member.  That argument has no basis in the asserted claims, which do not require any particular type of locking member.  Tonal expressly explained this in its November 21, 2025 letter.  Echelon nevertheless disregarded Tonal's explanation and instead improperly attempted to limit the scope of the claims to an exemplary embodiment from the specification, in violation of black letter patent law.  This behavior confirms that Echelon lacks any objectively reasonable basis to believe it does not infringe and has chosen to continue its infringing conduct anyway.

        25.     Another example of Echelon's attempts to excuse its infringement concerns the '618 Patent.  As Tonal detailed in its October 31, 2025 letter, Echelon's Strength Pro infringes the '618 Patent through a button on its handles that allows a user to pause and resume resistance, thus "racking" and "unracking" the weight.  Echelon responded by asserting that the Strength Pro can only incrementally adjust weight and cannot fully rack it.  That assertion is contradicted by Echelon's own product documentation:

**RESISTANCE CONTROLS**     Straight Bar Attachment Adjusts Resistance Level
                            Handle Grips Pause & Resume Resistance Level

But even if Echelon's assertion were true, as Tonal explained to Echelon, the Strength Pro would still infringe.  The '618 Patent discloses an embodiment whereby racking is done by "***reducing*** the load being placed on the cables."  '618 Patent at 2:46-48.

        26.     After Tonal identified these deficiencies, Echelon again abandoned its original position and pivoted to yet another meritless argument—asserting that the Strength Pro serially processes user input and therefore cannot override an unracking command while a racking command is being processed.  That assertion likewise does not negate infringement

because, even if Echelon's assertion is true, an "unrack" command can still be overridden if it is given while a prior "rack" command is being processed.

27.     These examples of Echelon's shifting non-infringement arguments are illustrative, not exhaustive.  This pattern of advancing, abandoning, and replacing objectively meritless non-infringement arguments further demonstrates that Echelon lacks a good-faith basis to believe it does not infringe.  Instead, it has chosen to continue its infringing conduct despite actual knowledge of the Asserted Patents.

## THE ASSERTED PATENTS

28.     Echelon is infringing and will continue to infringe the Asserted Patents by its manufacture, use, offer for sale, sale, and/or importation into the United States of the Infringing Product and by actively encouraging and instructing, and continuing to actively encourage and instruct, Echelon's customers and users to use the Infringing Product.

29.     The '983 Patent is titled "Exercise Machine with Pancake Motor," was filed on October 27, 2020, and was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on May 10, 2022.  Tonal is the sole legal owner of the '983 Patent.

30.     The '434 Patent is titled "Method and Apparatus for Facilitating Strength Training," was filed on May 19, 2011, and was duly and legally issued by the USPTO on October 16, 2012.  Tonal is the sole legal owner of the '434 Patent.

31.     The '618 Patent is titled "Racking and Unracking Exercise Machine," was filed on August 12, 2019, and was duly and legally issued by the USPTO on August 30, 2022.  Tonal is the sole legal owner of the '618 Patent.

32.     The '581 Patent is titled "Control Sequence Based Exercise Machine Controller," was filed on May 19, 2012, and was duly and legally issued by the USPTO on November 7, 2023.  Tonal is the sole legal owner of the '581 Patent.

**COUNT ONE**
**INFRINGEMENT OF U.S. PATENT NO. 11,324,983**

33.     Tonal incorporates by reference each of the preceding paragraphs as if set forth fully herein.

34.     Echelon has and continues to, directly, literally under 35 U.S.C. § 271(a), and/or equivalently under the doctrine of equivalents, infringe one or more claims of the '983 Patent at least through making, using, testing, offering to sell, selling, and/or importing into the United States the Infringing Product and its prototypes.

35.     Additionally, Echelon actively induces and will continue to actively induce infringement of one or more claims of the '983 Patent under 35 U.S.C. § 271(b), by actively encouraging and instructing and continuing to actively encourage and instruct Echelon's customers and users to use the Infringing Product that infringes the claims.

36.     For example, Echelon actively encourages and instructs Echelon's customers and users to use the Infringing Product that infringes the claims of the '983 Patent through, at least, its website marketing, product descriptions, and instructional content.[8]  Because the Infringing Product itself meets every limitation of at least Claim 1 of the '983 Patent, as detailed in Exhibit 9, Echelon's customers' and users' normal and intended use of the Infringing Product constitutes direct infringement of the '983 Patent.

---

[8] https://echelonfit.com/products/echelon-strength-pro.

37.     Echelon has known of the '983 Patent and its infringement at least as of October 31, 2025, when Tonal delivered to Echelon a letter notifying it of the '983 Patent and its infringement of that patent through the making, using, testing, offering to sell, selling, and/or importing into the United States of its Strength Pro product.  Tonal also provided Echelon with a detailed, exemplary claim chart explaining how Echelon's Strength Pro practices each element of Claim 1 of the '983 Patent, thereby placing Echelon on actual notice of its infringement.

38.     The Infringing Product infringes the '983 Patent.  For example, the Infringing Product meets each limitation of at least Claim 1 of the '983 Patent as detailed in Exhibit 9.

39.     Echelon's infringement of the '983 Patent has been willful and deliberate, at least as of October 31, 2025, when Tonal had delivered to Echelon a letter notifying it of the '983 Patent and its infringement.

40.     As a result of Echelon's infringement of the '983 Patent, Tonal has suffered and will continue to suffer damages in an amount to be proven at trial.

41.     Tonal is entitled to recover damages for pre-suit infringement because it has complied with 35 U.S.C. § 287, at least by providing Echelon with actual notice of Tonal's claim that Echelon infringes the '983 Patent.

42.     On information and belief, Echelon will continue to infringe, directly and/or indirectly, the '983 Patent unless enjoined by this Court.

43.     As a result of Echelon's infringement of the '983 Patent, Tonal has suffered and will continue to suffer irreparable harm unless Echelon is enjoined against such acts by this Court.

44.     As a result of Echelon's willful infringement of the '983 Patent, Tonal is entitled to an award of its reasonable attorneys' fees, as provided by 35 U.S.C. § 285.

## COUNT TWO
## INFRINGEMENT OF U.S. PATENT NO. 8,287,434

45.     Tonal incorporates by reference each of the preceding paragraphs as if set forth fully herein.

46.     Echelon has and continues to, directly, literally under 35 U.S.C. § 271(a), and/or equivalently under the doctrine of equivalents, infringe one or more claims of the '434 Patent at least through making, using, testing, offering to sell, selling, and/or importing into the United States the Infringing Product and its prototypes.

47.     Additionally, Echelon actively induces and will continue to actively induce infringement of one or more claims of the '434 Patent under 35 U.S.C. § 271(b), by actively encouraging and instructing and continuing to actively encourage and instruct Echelon's customers and users to use the Infringing Product that infringes the claims.

48.     As detailed in Exhibit 10, Echelon's website marketing, product descriptions, and instructional content encourage and instruct customers and users to perform each step of at least Claim 1 of the '434 Patent, and Echelon intends for its customers' and users' performance of those steps through normal and intended use of the Strength Pro.  For example, Echelon's instruction manual instructs users to select and use specific resistance modes that communicate resistance information to the exercise device.[9]  Echelon further instructs users how to perform exercises while the Strength Pro monitors exercise progress and provides video and/or audio feedback indicative of that progress.[10]  Echelon also instructs

---

[9] https://cdn.reflectgateway.com/pdfs/515cd2fd-6e43-41e2-9712-c191eff35175.pdf at 33.
[10] https://www.youtube.com/watch?v=GKUklAu_7FM.

users how to apply different magnitudes of resistance during the concentric and eccentric portions of a lift at substantially the same position during the exercise movement.[11]  Echelon's customers' and users' performance of these instructed steps during normal and intended use of the Strength Pro constitutes direct infringement of the '434 Patent.

49.    Echelon has known of the '434 Patent and its infringement at least as of October 31, 2025, when Tonal delivered to Echelon a letter notifying it of the '434 Patent and its infringement of that patent through the making, using, testing, offering to sell, selling, and/or importing into the United States of its Strength Pro product.  Tonal also provided Echelon with a detailed, exemplary claim chart explaining how Echelon's Strength Pro practices each element of Claim 1 of the '434 Patent, thereby placing Echelon on actual notice of its infringement.

50.    The Infringing Product infringes the '434 Patent.  For example, the Infringing Product meets each limitation of at least Claim 1 of the '434 Patent as detailed in Exhibit 10.

51.    Echelon's infringement of the '434 Patent has been willful and deliberate, at least as of October 31, 2025, when Tonal had delivered to Echelon a letter notifying it of the '434 Patent and its infringement.

52.    As a result of Echelon's infringement of the '434 Patent, Tonal has suffered and will continue to suffer damages in an amount to be proven at trial.

53.    Tonal is entitled to recover damages for pre-suit infringement because it has complied with 35 U.S.C. § 287, at least by providing Echelon with actual notice of Tonal's claim that Echelon infringes the '434 Patent.

---

[11] https://cdn.reflectgateway.com/pdfs/515cd2fd-6e43-41e2-9712-c191eff35175.pdf at 33.

54.     On information and belief, Echelon will continue to infringe, directly and/or indirectly, the '434 Patent unless enjoined by this Court.

55.     As a result of Echelon's infringement of the '434 Patent, Tonal has suffered and will continue to suffer irreparable harm unless Echelon is enjoined against such acts by this Court.

56.     As a result of Echelon's willful infringement of the '434 Patent, Tonal is entitled to an award of its reasonable attorneys' fees, as provided by 35 U.S.C. § 285.

## COUNT THREE
## INFRINGEMENT OF U.S. PATENT NO. 11,426,618

57.     Tonal incorporates by reference each of the preceding paragraphs as if set forth fully herein.

58.     Echelon has and continues to, directly, literally under 35 U.S.C. § 271(a), and/or equivalently under the doctrine of equivalents, infringe one or more claims of the '618 Patent at least through making, using, testing, offering to sell, selling, and/or importing into the United States the Infringing Product and its prototypes.

59.     Additionally, Echelon actively induces and will continue to actively induce infringement of one or more claims of the '618 Patent under 35 U.S.C. § 271(b), by actively encouraging and instructing and continuing to actively encourage and instruct Echelon's customers and users to use the Infringing Product that infringes the claims.

60.     For example, Echelon actively encourages and instructs Echelon's customers and users to use the Infringing Product that infringes the claims of the '618 Patent through, at least, its website marketing, product descriptions, and instructional content.[12]  Because the

---

[12] https://echelonfit.com/products/echelon-strength-pro.

Infringing Product itself meets every limitation of at least Claim 1 of the '618 Patent, as detailed in Exhibit 11, Echelon's customers' and users' normal and intended use of the Infringing Product constitutes direct infringement of the '618 Patent.

61.     Echelon has known of the '618 Patent and its infringement at least as of October 31, 2025, when Tonal delivered to Echelon a letter notifying it of the '618 Patent and its infringement of that patent through the making, using, testing, offering to sell, selling, and/or importing into the United States of its Strength Pro product. Tonal also provided Echelon with a detailed, exemplary claim chart explaining how Echelon's Strength Pro practices each element of Claim 1 of the '618 Patent, thereby placing Echelon on actual notice of its infringement.

62.     The Infringing Product infringes the '618 Patent. For example, the Infringing Product meets each limitation of at least Claim 1 of the '618 Patent as detailed in Exhibit 11.

63.     Echelon's infringement of the '618 Patent has been willful and deliberate, at least as of October 31, 2025, when Tonal had delivered to Echelon a letter notifying it of the '618 Patent and its infringement.

64.     As a result of Echelon's infringement of the '618 Patent, Tonal has suffered and will continue to suffer damages in an amount to be proven at trial.

65.     Tonal is entitled to recover damages for pre-suit infringement because it has complied with 35 U.S.C. § 287, at least by providing Echelon with actual notice of Tonal's claim that Echelon infringes the '618 Patent.

66.     On information and belief, Echelon will continue to infringe, directly and/or indirectly, the '618 Patent unless enjoined by this Court.

67.     As a result of Echelon's infringement of the '618 Patent, Tonal has suffered and will continue to suffer irreparable harm unless Echelon is enjoined against such acts by this Court.

68.     As a result of Echelon's willful infringement of the '618 Patent, Tonal is entitled to an award of its reasonable attorneys' fees, as provided by 35 U.S.C. § 285.

**COUNT FOUR**
**INFRINGEMENT OF U.S. PATENT NO. 11,806,581**

69.     Tonal incorporates by reference each of the preceding paragraphs as if set forth fully herein.

70.     Echelon has and continues to, directly, literally under 35 U.S.C. § 271(a), and/or equivalently under the doctrine of equivalents, infringe one or more claims of the '581 Patent at least through making, using, testing, offering to sell, selling, and/or importing into the United States the Infringing Product and its prototypes.

71.     Additionally, Echelon actively induces and will continue to actively induce infringement of one or more claims of the '581 Patent under 35 U.S.C. § 271(b), by actively encouraging and instructing and continuing to actively encourage and instruct Echelon's customers and users to use the Infringing Product that infringes the claims.

72.     For example, Echelon actively encourages and instructs Echelon's customers and users to use the Infringing Product that infringes the claims of the '581 Patent through, at least, its website marketing, product descriptions, and instructional content.[13] Because the Infringing Product itself meets every limitation of at least Claim 1 of the '581 Patent, as

---

[13] https://echelonfit.com/products/echelon-strength-pro.

detailed in Exhibit 12, Echelon's customers' and users' normal and intended use of the Infringing Product constitutes direct infringement of the '581 Patent.

73.     Echelon has known of the '581 Patent and its infringement at least as of October 31, 2025, when Tonal delivered to Echelon a letter notifying it of the '581 Patent and its infringement of that patent through the making, using, testing, offering to sell, selling, and/or importing into the United States of its Strength Pro product.  Tonal also provided Echelon with a detailed, exemplary claim chart explaining how Echelon's Strength Pro practices each element of Claim 1 of the '581 Patent, thereby placing Echelon on actual notice of its infringement.

74.     The Infringing Product infringes the '581 Patent.  For example, the Infringing Product meets each limitation of at least Claim 1 of the '581 Patent as detailed in Exhibit 12.

75.     Echelon's infringement of the '581 Patent has been willful and deliberate, at least as of October 31, 2025, when Tonal had delivered to Echelon a letter notifying it of the '581 Patent and its infringement.

76.     As a result of Echelon's infringement of the '581 Patent, Tonal has suffered and will continue to suffer damages in an amount to be proven at trial.

77.     Tonal is entitled to recover damages for pre-suit infringement because it has complied with 35 U.S.C. § 287, at least by providing Echelon with actual notice of Tonal's claim that Echelon infringes the '581 Patent.

78.     On information and belief, Echelon will continue to infringe, directly and/or indirectly, the '581 Patent unless enjoined by this Court.

79.     As a result of Echelon's infringement of the '581 Patent, Tonal has suffered and will continue to suffer irreparable harm unless Echelon is enjoined against such acts by this Court.

80.     As a result of Echelon's willful infringement of the '581 Patent, Tonal is entitled to an award of its reasonable attorneys' fees, as provided by 35 U.S.C. § 285.

### PRAYER FOR RELIEF

WHEREFORE, Tonal seeks relief against Echelon as follows:

a.     A judgment that Echelon has been, and is currently, infringing the Asserted Patents;

b.     An award to Tonal of monetary relief sufficient to compensate Tonal for damages resulting from Echelon's infringement of the Asserted Patents, including lost profits and/or a reasonable royalty under 35 U.S.C. § 284, and pre-judgment and post-judgment interest;

c.     An order enjoining Echelon, its officers, agents, servants, and employees, and those persons in active concert or participation with any of them, from commercially manufacturing, using, making, offering for sale, selling, or importing the Infringing Product, or inducing others to infringe the Asserted Patents, prior to the expiration date of the Asserted Patents;

d.     An award to Tonal of enhanced damages, up to and including trebling of the damages awarded to Tonal;

e.     A finding that this case is exceptional pursuant to 35 U.S.C. § 285 and an award to Tonal of its attorneys' fees and costs; and

      f.     Any further necessary and proper relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff Tonal demands a trial by jury on all issues presented in this Complaint that are so triable.

Dated:  February 10, 2026

OF COUNSEL:

Timothy C. Saulsbury
Joyce C. Li
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA 94105
(415) 268-7000

Sara Doudar
**MORRISON & FOERSTER LLP**
12531 High Bluff Drive, Suite 200
San Diego, CA 92130
(858) 720-5100

Respectfully submitted,

**MCCARTER & ENGLISH, LLP**

*/s/ Daniel M. Silver*
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6331
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Plaintiff Tonal Systems, Inc.*